WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R. Prasad Industries, a Guyanese company, | Case No. CV-12-08261-PCT-JAT |
| Plaintiff, | **ORDER RE: THIRD PARTY'S MOTION TO QUASH SUBPOENA** |
| v. | |
| Flat Irons Environmental Solutions Corporation (aka/dba "Flatirons Environmental Solutions Corporation"), an Arizona corporation; Gary Miller and Jane Doe Miller, husband and wife; Robert Carlile (aka "Robert Carillo") and Jane Doe Carlile, husband and wife | |
| Defendants. | |

Currently pending before the Court is a Motion to Quash Subpoena (Doc. 102) filed by third party, Michela Di Carlo, and her business, MPP Consulting (collectively, "Di Carlo"). Plaintiff R. Prasad Industries ("Prasad") has also filed a Response (Doc. 106) in opposition to the motion, and Di Carlo has filed a Reply (Doc. 108). The Court now rules on the motion.

## I.    BACKGROUND

Prasad brought the Complaint (Doc. 1) against Defendants Flat Irons Environmental Solutions Corporation ("Flat Irons"), Gary Miller, Jane Doe Miller, Robert Carlile, and Jane Doe Carlile (collectively "Defendants"), alleging a breach of contract (and related claims) stemming from the failed purchase of large quantities of

fertilizer. More specifically, Prasad alleges that, beginning on or about August 29, 2012, Prasad negotiated a contract to purchase 5,000 metric tons of urea fertilizer from Defendants. (Doc. 1 ¶¶ 17, 19). On September 19, 2012, Prasad wired $525,000 to Defendants but never received any fertilizer. (*Id.* ¶¶ 31, 56).

At the time it received the payment from Prasad, Flat Irons had only $3,895.55 in its sole bank account. (Doc. 104 at 164). In the following months, defendants Robert Carlile and Gary Miller, the two sole officers and shareholders of Flat Irons, wrote over 35 checks to themselves totaling more than $196,000. (*Id.* at 179–219). On November 19, 2012, Flat Irons also wired $190,000 from its bank account to Di Carlo's account with Union Bank of California ("UBOC"). (Doc. 106-1 at 2, 6). During discovery, on March 7, 2014, Prasad issued a Rule 45 subpoena duces tecum to UBOC, commanding the bank to produce "signature cards, corporate board authorization minutes or partnership resolutions or articles of organization for the entity/dba MPP Consulting . . . [and] copies of any and all incoming/outgoing wires, cancelled checks, deposits and withdrawals for 2012–13." (Doc. 102 at 9). The subpoena required that the documents be submitted to Prasad's counsel in Scottsdale, Arizona, by March 28, 2014. (*Id.*). The branch of UBOC used by Di Carlo, and to which Plaintiff's counsel issued the subpoena, is located in Burbank, California. (*Id.*).

UBOC notified Di Carlo of the subpoena in a letter dated March 17, 2014. (*Id.* at 8–9). On March 25, 2014, Di Carlo sent a letter to Prasad requesting that the subpoena be cancelled immediately because the information sought constituted her private financial records and she was not a party to the litigation. (*Id.* at 14). Along with the letter, Di Carlo provided a copy of her November 2012 UBOC account statement that showed only receipt of the wire transfer from Flat Irons for $190,000 and a total for deposits during the month of $190,222.97, with information regarding all other transactions redacted. (*Id.* at 15–17). Di Carlo provided no other information requested by the subpoena. (*Id.*). On March 26, 2014, Di Carlo filed the instant Motion to Quash Subpoena. (Doc. 102).

1   **II.     LEGAL STANDARD**

2          Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a

3   subpoena. More specifically, Rule 45(d)(3)(A) identifies circumstances in which a court

4   is required to grant a motion to quash or modify the subpoena. This contrasts with Rule

5   45(d)(3)(B), which "identifies circumstances in which a subpoena *should be quashed*

6   unless the party serving the subpoena shows a substantial need and the court can devise

7   an appropriate accommodation to protect the interests of the witness." Fed. R. Civ. P.

8   45(c)(3)(B) advisory committee's note to the 1991 Amendment (emphasis added). Rule

9   45(d)(3)(A) provides in pertinent part:

10                 (A) On timely motion, the issuing court must quash or modify
11                 a subpoena that
                   . . .
12                 (ii) requires a person to comply beyond the geographical
                   limits specified in Rule 45(c);
13                 (iii) requires disclosure of privileged or other protected
                   matter, if no exception or waiver applies; or
14                 (iv) subjects a person to undue burden

15

16   Fed. R. Civ. P. 45(d)(3)(A)(ii)–(iv). The pertinent part of Rule 45(c) states: "A subpoena

17   may command: production of documents, electronically stored information, or tangible

18   things at a place within 100 miles of where the person resides, is employed or regularly

19   transacts business in person." Fed. R. Civ. P. 45(c)(2)(A).

20          Federal Rule of Civil Procedure 26 is also relevant here because it defines the

21   permissible scope of discovery, and a Rule 45 subpoena is subject to that same scope.

22   Fed. R. Civ. P. 45(d)(a) advisory committee's note to the 1970 Amendment. *See also,*

23   *e.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (in

24   considering a motion to quash a subpoena duces tecum, the court must also consider

25   whether the subpoena "is overly broad or seeking irrelevant information under the same

26   standards set forth in Rule 26(b)"). Rule 26(b) provides for a broad scope of discovery:

27   "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

28   party's claim or defense . . . . Relevant information need not be admissible at the trial if

the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

This mere "relevance" standard, however, does not apply to nonparties. *See Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . , the 'necessary' restriction may be broader when a nonparty is the target of discovery."); *see also, e.g., Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery . . . require a stronger showing of relevance than for simple party discovery."). To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure. *See, e.g., Slater Steel, Inc. v. Vac-Air Alloy Corp.*, 107 F.R.D. 246, 248 (W.D.N.Y. 1985) (granting a nonparty's motion for a protective order against discovery involving entry upon land of nonparty in a fraud and contract action because the nonparty demonstrated that the information sought is highly confidential commercial matter and that disclosure would cause it significant harm). Furthermore, Rule 26(b)(2)(C) also requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)−(iii).

## III.   ANALYSIS

### A.   Di Carlo's Standing to Bring a Rule 45(d) Motion to Quash Subpoena

Prasad does not specifically raise the issue of whether Di Carlo has standing to move to quash pursuant to Rule 45(d)(3)(A). (Doc. 106). In its Response, however, Prasad argues that Di Carlo does not have standing to assert the geographical limitation of Rule 45(d)(3)(A)(ii) because UBOC, not Di Carlo, is the entity subpoenaed to provide the documents. (*Id.* at 4). Several courts have held that nonparties who were not themselves the targets of the subpoena do not have standing pursuant to Rule 45(d)(3)(A)

to move to quash. *See, e.g., Leanders v. Yassai* (*In re Yassai*), 225 B.R. 478, 481–82 (Bankr. C.D. Cal. 1998) (finding a nonparty who had engaged in business dealings with the defendant, and who wished to quash a subpoena issued to a financial institution, also a nonparty, did not have standing under Rule 45(d)(3)(A) to make such a motion despite the movant's privacy interest in the financial records sought); *Salem Vegas, L.P. v. Guanci*, No. 2:12-CV-01892-GMN, 2013 WL 5493126, at *3 (D. Nev. Sept. 30, 2013) (finding that a nonparty business did not have standing to move to quash a subpoena issued to its bank, also a nonparty, despite the business's claim that the financial documents requested were privileged and such disclosure would violate its privacy rights). Several courts have likewise found that even the parties to a suit lack standing to move to quash if they were not the target of the subpoena. *See, e.g., In re Rhodes Cos., LLC*, 475 B.R. 733, 740 (D. Nev. 2012) (only the party subject to the subpoena may bring a motion to quash under Rule 45(d)(3)(A)).

Other courts, however, have held that parties or nonparties claiming privilege in the information subpoenaed from a different nonparty do have such standing to move to quash pursuant to Rule 45(d)(3)(A). *See, e.g.*, *Broadcort Capital Corp. v. Flagler Secs., Inc.,* 149 F.R.D. 626, 628 (D. Col. 1993) (holding that a nonparty movant did have standing to move to quash a subpoena issued to another nonparty for telephone records based on the claim that the record were privileged); *Schmulovich v. 1161 Route 9, LLC*, CIV.A. 07-597FLW, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (personal rights claimed with respect to bank accounts gave party standing to challenge a nonparty subpoena served upon financial institutions).

In the present case, Di Carlo, similar to the movants in *Salem*, *In Re Yasai*, and *Broadcort*, is a nonparty to the suit and is moving to quash a subpoena issued to another nonparty, UBOC. (Doc. 102). These holdings thus create a question of Di Carlo's standing, in general, to move to quash pursuant to Rule 45(d)(3)(A). However, because Prasad did not directly raise this issue in his Response, the Court assumes without deciding that, for the purposes of this Order, Di Carlo has standing, in general, to move to

- 5 -

1  quash the subpoena issued to UBOC.

2      **B.**       **Privileged or Protected Information under Rule 45(c)(3)(A)(iii)**

3         Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a court to quash or

4  modify a subpoena if it compels disclosure of a privileged or protected matter. Di Carlo

5  claims that the subpoena to UBOC seeking her financial information must be quashed

6  because her bank records qualify as a privileged or protected matter under California law.

7  (Doc. 102 at 2−3). In support of this claim, Di Carlo states that "Article 1, Section 1 of

8  the California Constitution creates a right of privacy for individuals." (*Id.* at 2). In its

9  Response, Prasad argues that the bank records are not privileged, and are thus

10  "discoverable and proper subjects of a subpoena under both California and Arizona law."

11  (Doc. 106 at 4).

12         Federal Rule of Evidence 501 "provides the framework for determining whether

13  material sought in discovery is privileged." *Mem'l Hosp. for McHenry Cnty. v. Shadur*,

14  664 F.2d 1058, 1061 (7th Cir. 1981) (*per curiam*). Rule 501 states that "in a civil case,

15  state law governs privilege regarding a claim or defense for which state law supplies the

16  rule of decision." Fed. R. Evid. 501. Accordingly, state law dictates how the Court

17  recognizes privilege in this case because only state law claims remain in the pending

18  action against Defendants. (Doc. 27).

19         The facts here, however, raise the issue of whether the laws of California or

20  Arizona apply with respect to what constitutes a privileged and protected matter. The

21  subpoena was served in California (Doc. 102 at 9), where the subpoenaed party, UBOC,

22  and the movant, Di Carlo, both reside (*id.* at 1, 9). However, Prasad's remaining claims

23  against Defendants arise solely under Arizona substantive law (Doc. 27), and the

24  subpoena issued from this Court, sitting in Arizona (Doc. 102 at 9). Prior to the 2013

25  Amendments to the Federal Rules of Procedure, Rule 45 subpoenas to nonparties often

26  issued from local district courts, so a motion such as this would typically have been

27  resolved by a court in California, applying California law. The 2013 Amendments,

28  however, changed the rule to "recognize the court where the issue is pending as the

issuing Court [and] permit nationwide service of a subpoena." Fed. R. Civ. P. 45 advisory committee notes to the 2013 Amendment. Because the Court finds that application of either California or Arizona law yields the same result, however, the Court refrains from determining which state's laws apply here.

### 1. Privilege or Protection of Bank Record Information under California Law

California state courts have recognized there is no "bank-customer privilege akin to the lawyer-client privilege," but that "confidential financial information given to a bank by its customers is protected by the right to privacy" under the California Constitution. *Fortunato v. Super. Ct.*, 8 Cal. Rptr. 3d 82, 86 (App. 2003) (quoting *Valley Bank of Nev. v. Super. Ct.*, 542 P.2d 977 (1975)) (granting a contestant's protective order sought in relation to his personal tax returns that he had submitted to a bank in connection with a home loan because the party seeking discovery had only made assertions that showed the information might conceivably be relevant and did not explain how the contents of the returns would materially affect the issues in controversy). Accordingly, under California law, a court may allow discovery of a nonparty's private financial records from a bank, but only after "carefully balanc[ing] 'the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other.'" *Id.* This protection extends to confidential information in any form, including "tax returns, checks, statements, or other account information." *Fortunato*, 8 Cal. Rptr. 3d at 86. Courts applying this balancing test should consider:

> the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances.

*Id.* (quoting *Valley Bank of Nev.*, 542 P.2d at 980). *See also, e.g., Hecht, Solberg,*

*Robinson, Goldberg & Bagley v. Super. Ct.*, 40 Cal. Rptr. 3d 446 (App. 2006) (granting motion to compel discovery of private financial records of a nonparty because of the information's significant relevance to the case).

Applying this standard to the present case, the Court finds that, under California law, Di Carlo's UBOC account information from November 18, 2012 through 2013 is presumed protected, but is nonetheless discoverable because: (a) the purpose of the information sought is relevant to the issue in controversy and will likely have a significant effect on the parties to the case; (b) Prasad lacks means to discover equivalent information elsewhere; and (c) Di Carlo has not articulated how the disclosure will harm her beyond a general intrusion into her privacy.

Di Carlo argues that the subpoena seeks "significantly more information" than what is relevant to the litigation because it asks for account records that show all transactions on her UBOC bank account, rather than merely confirming receipt of the wire transfer from Flat Irons. (Doc. 102 at 2). In its Response, Prasad argues that the purpose of the information sought is to discover the disposition of $190,000 of funds that Defendants' bank records show originated from the allegedly fraudulent transaction central to this case. (Doc. 106 at 2–3). Prasad contends that the disposition of these funds is relevant to Prasad's rebutting of claims by Defendants that they were unable to refund the $525,000 that they received from Prasad. (*Id.* at 2). Di Carlo's account information may also yield information as to whether Defendants acted in good faith in attempting to obtain the fertilizer to supply Prasad. Considering the number of transactions from Flat Iron's account that involved transfers of funds to Defendants and their businesses (Doc. 104 at 179–219), as well as the size and timing of the sum transferred, Di Carlo's account information may also yield additional evidence relevant to Prasad's fraud and unjust enrichment claims. Finally, if Prasad receives a favorable judgment on the pending claims, the disposition of the funds may also be relevant to Prasad's ability to recover those funds. In *Fortunato*, the real party seeking the protected information failed to explain the materiality of the information sought in relation to the litigation. 8 Cal. Rptr.

3d at 88. Here, in contrast, Prasad has articulated how Di Carlo's account history, subsequent to the wire transfer from Flat Irons, may be relevant to the underlying litigation. Accordingly, Prasad's stated purpose in seeking Di Carlo's banking information from UBOC is relevant to the issue in controversy and will likely have a significant effect on the parties to the case. Thus, this factor militates in favor of disclosure of the information.

Prasad also lacks means to acquire equivalent information on how Di Carlo disposed of the $190,000 wired to her account by the Defendants without accessing Di Carlo's bank records. Prasad argues that it attempted to obtain such information by questioning Defendants, Carlile and Miller, but they elected to plead the Fifth Amendment in response to those questions. (Doc. 106 at 3). In addition, Di Carlo provided only a redacted version of her account information that lacked the pertinent details of any transactions that occurred after the wire transfer. (Doc. 102, 14–17). That copy confirmed only that Di Carlo received the wire transfer and the total deposits received into her account that month. (*Id.*). The Court sees no alternative means by which Prasad can discover what happened to the funds after their transfer to Di Carlo's account. Therefore, this factor also weighs in favor of disclosure of Di Carlo's bank records.

Finally, Di Carlo bases her objection to UBOC's disclosure of her account information solely on her right to privacy in her financial documents. (Doc. 102 at 2). Di Carlo does not articulate any other specific harm that would result from disclosure of her account information pursuant to the subpoena. (Doc. 102; Doc. 108). While Di Carlo's privacy interest alone does have value, because she did not outline more specific harms that she would suffer as a result of disclosure of her banking records, this factor does not weigh as heavily in favor of nondisclosure as it otherwise might have.

After balancing the factors identified by California courts, the Court finds that the import the information has in the underlying litigation outweighs Di Carlo's privacy concerns. Accordingly, under California law, neither privilege nor special protection preclude discovery of the information subpoenaed from UBOC. Therefore, the Court

finds that California law does not recognize the privilege or protection necessary to grant Di Carlo's Motion to Quash the Subpoena pursuant to Rule 45(d)(3)(A)(iii).

### 2. Privilege or Protection of Bank Record Information under Arizona Law

Rule 501 of the Arizona Rules of Evidence states: "The common law—as interpreted by Arizona courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States or Arizona Constitution; an applicable statute; or rules prescribed by the Supreme Court." Ariz. R. Evid. 501. In contrast to California law, as described above, the Court has not found any statutes or any holdings by Arizona courts that have recognized any privilege or other special protection from discovery that applies to an individual's private financial information held by a bank. *See, e.g.,* 2B Ariz. Prac., Civil Rules Handbook R. 501. The Arizona Supreme Court has, however, identified four criteria that must be met for a communication to be considered privileged in a given case:

> (1) it originates in a confidence that it will not be disclosed, (2) confidentiality is essential to the full maintenance of the relationship between the parties, (3) the relationship is one that the community believes should be fostered, and (4) the injury to the relationship that would occur from disclosure would be greater than the benefit gained by the aid given to the litigation.

*City of Tucson v. Super. Ct. in & for Cnty. of Pima*, 809 P.2d 428, 432 (Ariz. 1991) (citing *Humana Hosp. Desert Valley v. Super. Ct.*, 742 P.2d 1382, 1387 (Ariz. Ct. App. 1987) (citing 8 Wigmore, Evidence § 2285, at 527 (McNaughton rev. 1961); 1 M. Udall & J. Livermore, Arizona Practice: Law of Evidence § 71, at 123–26 (2d ed. 1982))) (in a civil action against the city by a former magistrate who was not reappointed, holding communications submitted to a city commission created to make recommendations to the mayor and city council regarding the selection and reappointment of city magistrates were privileged from disclosure). The Arizona Supreme Court also emphasized, however, that it wished to follow the guidelines of the United States Supreme Court in declining to develop rules of privilege on a case-by-case basis "expansively." *City of Tucson*, 809

1    P.2d at 432 (referring to *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)).

2         Here, the bank-customer relationship between Di Carlo and UBOC satisfies the

3    first three criteria of the Arizona Supreme Court's test for privilege to apply. Bank

4    customers have a general expectation of privacy in their financial information.

5    Accordingly, communication between the customer and the bank originates in a

6    confidence that bank employees will not disclose the customer's account information to

7    third parties without the customer's consent. Likewise, to the extent that bank customers

8    rely on banks keeping their information confidential and secure, this confidentiality is

9    essential to the full maintenance of the relationship. Finally, the bank-customer

10   relationship is also one that any community would likely support fostering as a necessary

11   component of commerce. Each of these first three criteria supports a finding of privilege

12   between banks and their customers.

13        However, Di Carlo's relationship with UBOC does not meet the fourth necessary

14   criterion of the Arizona Supreme Court's privilege standard because here the injury that

15   would occur to the relationship from disclosure would not be greater than the benefit

16   gained by the aid given to the litigation. As described above in the Court's application of

17   California's balancing test (*supra* III.B.1), Prasad's stated purpose in seeking the

18   information from UBOC is highly relevant to the claims at issue in this case and Prasad

19   cannot obtain equivalent evidence through less intrusive, alternative means. Defendants

20   wired $190,000 to Di Carlo's account, a figure that represents over one third of the

21   alleged fraud. (Doc. 106 at 2). Whereas this connection to the litigation is significant, the

22   harm that disclosure would inflict on Di Carlo's relationship with UBOC is relatively

23   minor. Di Carlo may still assume that UBOC (or any other bank with which she does

24   business) will confidentially maintain her financial records, subject only to rare occasions

25   where the information becomes the target of a valid subpoena. Accordingly, the benefit

26   of disclosure of Di Carlo's account information to the underlying litigation outweighs the

27   harm to Di Carlo's relationship with UBOC, and the relationship does not meet the fourth

28   necessary element of Arizona's privilege test.

1       Thus, under Arizona law, the Court finds that Di Carlo's communications with

2      UBOC, specifically the subpoenaed account information, is not privileged. Hence, neither

3      privilege nor special protection preclude discovery of the information subpoenaed from

4      UBOC under Arizona law. Accordingly, the Court finds that neither Arizona nor

5      California law provides the privilege or protection necessary to grant Di Carlo's Motion

6      to Quash the Subpoena pursuant to Rule 45(d)(3)(A)(iii).

7      **3.      Scope of Discovery and Protective Measures  to Limit**

8      Although the Court finds that Di Carlo's privacy interests in her account

9      information are insufficient to rise to privilege that would require the Court to grant the

10     motion to quash, the Court does recognize the importance of protecting Di Carlo's

11     privacy as much as possible under both Federal Rule of Civil Procedure 26(b) and state

12     law. Thus, the Court will limit the scope of the subpoena to the Di Carlo account records

13     from November 18, 2012 to December 31, 2013, consistent with Prasad's concession to

14     do so (Doc. 1−6 at 3). The Court will also require that parties to the case securely

15     maintain the financial information produced by UBOC, refrain from disclosing it to any

16     nonparty, and destroy any copies of it after resolution of the present case.

17     **C.      Geographical Limitation under Rule 45(c)**

18     Di Carlo argues that because the subpoena compels the UBOC branch in Burbank,

19     California, to produce documents at the office of Prasad's counsel in Scottsdale, Arizona,

20     the subpoena violates the 100-mile geographical limit set forth by Rule 45(c)(2)(A).

21     (Doc. 102 at 4). Di Carlo contends that, accordingly, this requires the Court to grant the

22     Motion to Quash pursuant to Rule 45(d)(3)(A)(ii). (*Id.*). Prasad, in its Response, argues

23     that Di Carlo does not have standing to make the motion to quash on these grounds

24     because Di Carlo is not the entity subpoenaed to provide the documents and the bank has

25     not joined the motion. (Doc. 106 at 4). In addition, Prasad states in its Response that it

26     welcomes UBOC to produce the subpoenaed documents at the office of its counsel also

27     located in Burbank, "exactly three miles" from the subpoenaed bank branch, as an

28     alternative. (*Id.*).

The Court assumes for this order that Di Carlo has standing, in general, to move to quash pursuant to Rule 45(d)(3)(A) because the documents in possession of UBOC contain her personal financial information. (*Supra* III.A). However, Di Carlo's assumed standing extends only so far as to assert her own interests, not those of the subpoenaed nonparty. Here, the 100-mile geographical limit set forth in Rule 45(c)(2)(A) and referred to in Rule 45(d)(3)(A)(ii) protects only UBOC because the subpoena commands only UBOC to produce the documents. UBOC's production of the documents beyond the 100-mile limit does not affect Di Carlo any differently than the bank's production of the documents within 100 miles. Accordingly, the Court finds that Di Carlo does not have standing to assert the geographical limitation as grounds to quash the subpoena. Furthermore, Prasad's willingness to accept the documents at the office in Burbank renders any argument pursuant to Rule 45(d)(3)(A)(ii) moot.

### D.    Di Carlo's Motion for a Protective Order Pursuant to Rule 26(c)

Di Carlo alleges that Prasad has no legitimate need for the financial information sought in its subpoena to UBOC (Doc. 102 at 4–5; Doc. 108 at 3) and asserts the right to move for a protective order under Rule 26(c) (Doc. 102 at 4). Rule 26(c) provides:

> *A party or any person from whom discovery is sought* may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c)(1) (emphasis added).

Di Carlo does not have the necessary standing to move for a protective order under Rule 26(c), which provides for a motion distinct from that available under Rule 45(d). Unlike Rule 45(d)(3)(A), Rule 26(c) states specifically who may make a motion pursuant to the Rule. *In re Yassai*, 225 B.R. at 484 (holding that a nonparty who was not the target of a subpoena does not have standing to make a Rule 26(c) motion for a protective order). "The language . . . is expressly limited to the parties or the person from whom the discovery is sought." *Id.* Because Di Carlo is neither a party to the suit nor the person from whom the information is sought, she does not have standing to move for a

1   protective order under Rule 26(c).

2         **E.**      **Undue Burden under Rule 45(d)(3)(A)(iv)**

3         Di Carlo claims that "annoyance, embarrassment, oppression or undue burden or

4   expense . . . would result from disclosure of her personal financial matters that are not

5   relevant to the accusations in [Prasad's] complaint." (Doc. 102 at 3). Although Di Carlo

6   raises these claims in reference to Rule 26(c), if the subpoena subjected Di Carlo to an

7   undue burden, this would require quashing the subpoena pursuant to Federal Rule of

8   Civil Procedure 45(d)(3)(A)(iv) (a court must quash a subpoena if it "subjects *a person* to

9   undue burden" (emphasis added)). However, the "undue burden" language as used in

10  Rule 45 and Rule 26 "is limited to harms inflicted in complying with the subpoena," and

11  not to "related follow-on issues such as whether the subpoenaed information is

12  potentially protected by privilege." *Mount Hope Church v. Bash Back!*, 705 F.3d 418,

13  427–8 (9th Cir. 2012); *see also In re Yassai*, 225 B.R. at 484 (citing *In re County of*

14  *Orange*, 208 B.R. 117, 120) ("Common examples of undue burden include: 'untimely

15  service, inability to appear, inability to produce requested documents or things, failure to

16  identify items requested, or excessive costs.'"). Thus, the Court finds that the subpoena

17  does not subject Di Carlo to an undue burden because she is not the individual or entity

18  tasked with compliance. Accordingly, the Court finds that, like the geographical

19  limitation, Rule 45(d)(3)(A)(iv) does not constitute grounds for granting Di Carlo's

20  Motion to Quash Subpoena.

21  **IV.**     **CONCLUSION**

22        Based on the forgoing,

23        **IT IS ORDERED** that the Motion to Quash Subpoena filed by third party

24  Michela Di Carlo and MPP (Doc. 102) is DENIED; however, production is limited as

25  specified below.

26        **IT IS FURTHER ORDERED** that the subpoena issued by Plaintiff Prasad to

27  UBOC is limited to production of Di Carlo's bank account statements from November

28  18, 2012 through 2013.

1      **IT IS FURTHER ORDERED** that the parties will securely maintain Di Carlo's

2    financial information upon receipt, will not disclose it to any third party except as

3    required to prosecute these proceedings; and will destroy it at the conclusion of these

4    proceedings as specified above.

5      **IT IS FINALLY ORDERED** that within seven days of the issuance of this Order,

6    Prasad shall deliver a copy of this order to UBOC and specifically communicate the

7    above temporal limitation on the previously issued subpoena.

8      Dated this 19th day of June, 2014.

James A. Teilborg
Senior United States District Judge