1    WO

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

9    R. Prasad Industries,                  No. CV-12-08261-PCT-JAT

10                   Plaintiff,              **ORDER**

11   v.

12   Flat Irons Environmental Solutions
     Corporation, et al.,

14                   Defendants.

16          Pending before the Court is Plaintiff R. Prasad Industries' ("Prasad") Motion for
28 U.S.C. § 1927 Sanctions (Doc. 89) against Defendants Flat Irons Environmental
Solutions Corporation, Gary Miller, Jane Doe Miller, Robert Carlile, and Jane Doe
Carlile (collectively "Defendants") and their counsel, Frederic M. Douglas ("Mr.
Douglas") related to Defendants' filing of the First Amended Answer, Counterclaims,
Cross-claims, and Jury Demand ("FAACC") (Doc. 55). Also pending is non-parties
Franklin Thomas Hovore, Powers & Hovore PLLC, and Hovore Law PLLC's
(collectively, "Hovore") Motion for Entry of Judgment under Rule 54(b) (Doc. 85) and
Motion for 28 U.S.C. § 1927 Sanctions (Doc. 84) against Defendants and Mr. Douglas.
Each motion is fully briefed. The Court now rules on the motions.

**I.      BACKGROUND**

          Prasad brought the Complaint (Doc. 1) against Defendants alleging a breach of
contract (and related claims) stemming from the failed purchase of large quantities of

1   fertilizer. On or about November 5, 2012, Prasad hired Hovore to pursue its legal
2   remedies and Hovore drafted and mailed a demand letter to Defendants. (*Id.* ¶ 67).
3   Among other things, the demand letter opines that Defendants' actions constituted a
4   "criminal act" and states that if the $525,000 is not immediately returned, Prasad and the
5   Guyana consulate will "jointly file a criminal action against [Defendants] with the
6   Attorney General of Arizona." (*Id.* at Ex. CC). After Defendants failed to respond to the
7   demand letter, this litigation commenced on December 30, 2012 when, on behalf of
8   Prasad, Hovore filed the Complaint (Doc. 1) against Defendants.

9       The Complaint included a claim under the civil portion of the Arizona
10  Racketeering statute, Ariz. Rev. Stat. Ann. § 13-2314.04 (West 2013).  On January 17,
11  2013, Prasad served a letter and a copy of the Complaint to the Arizona Attorney
12  General's office (Doc. 14; Doc. 55 at Ex. 1), pursuant to Subsection H of the Arizona
13  Racketeering statute.[1]

14      Defendants allege that on February 14, June 11, and June 14, 2013, Hovore
15  communicated to Mr. Douglas that Hovore had been and intended to further
16  communicate with the Arizona Attorney General's office regarding potential criminal
17  charges against Defendants. (Doc. 55 at 37–38, ¶¶ 29–32). On June 21, 2013, Defendants
18  filed their original Answer, Counterclaims, and Jury Demand (Doc. 35) and served the
19  pleading on Hovore with "Summons for Third-Party Defendants" (Docs. 36–40). The
20  Counterclaim portion of Defendants' pleading contained four counts alleging that Prasad
21  and Hovore extorted Defendants, abused the judicial process, and intentionally inflicted
22  emotional distress on Defendants by "threating" to notify the Arizona Attorney General
23  of Defendants' alleged criminal actions and acting on those "threats." (Doc. 35). Because
24  of Defendants' attempt to inject Prasad's counsel, Hovore, into the proceedings as a party
25  potentially adverse to Prasad, Hovore was forced to severely limit its representation of
26  Prasad until the "counterclaims" could be resolved. As a result, Prasad hired independent

27
28      [1] A.R.S. § 13-2314.04(H) requires that "[a] person who files an action under this section shall serve notice and one copy of the pleading on the attorney general within thirty days after the action is filed with the superior court."

- 2 -

counsel to assist with its representation and Hovore hired its own counsel.

Prasad and Hovore both filed Motions to Dismiss under Rules 12(b)(1), (5), and (6), and to Strike Defendants' original Answer and Counterclaims.  (Docs. 43–44, 48). These motions explained the numerous jurisdictional, factual, and legal deficiencies of Defendants' "counterclaims." Defendants did not file a Response to Prasad and Hovore's motions. However, on August 2, 2013, Defendants filed the First Amended Answer, Counterclaims, Cross-claims, and Jury Demand ("FAACC") (Doc. 55) and served the pleading on Hovore with "Summons for Third-Party Defendants" (Docs. 57–58, 60–63). In the counterclaims and cross-claims portion of the FAACC, Defendants added a fifth count alleging the "interstate transmission of extortionate threats" in violation of 18 U.S.C. § 875(d).  (Doc. 55 at 55). Moreover, the only significant change in the original four claims was that, to preserve complete diversity, the original four counts were now pleaded by only the California-residing Carlile Defendants and not also the Arizona-residing defendants (Flat Irons and the Miller Defendants).[2] Prasad and Hovore filed Rule 12(b)(1) and 12(b)(6) Motions to Dismiss and Rule 12(e) and 12(f) Motions to Strike that were substantially similar to their original motions. (Docs. 64, 68). Hovore also filed a Motion for Sanctions pursuant to 28 U.S.C. § 1927.  (Doc. 68).

In its December 17, 2013 Order (Doc. 83), the Court dismissed the "counterclaims" against Prasad on jurisdictional grounds without prejudice. The Court dismissed the "counterclaims" against Hovore with prejudice because, among other reasons, Hovore was not a proper party to this litigation. The Court did not reach the merits of Prasad and Hovore's Rule 12(b)(6) motions. Additionally, the Court denied Hovore's motion for 28 U.S.C. § 1927 sanctions and Prasad's request for attorneys' fees without prejudice and instructed Hovore and Prasad to refile the requests as separate motions formatted according to the guidelines in LRCiv 54.2.

Now, Hovore and Prasad have both refiled their requests as the instant motions for sanctions under 28 U.S.C. § 1927, or, alternatively, under the Court's inherent power or

[2] Hovore are Arizona residents.

- 3 -

A.R.S. § 12-349. (Docs. 85, 89). Additionally, Hovore seeks a Rule 54(b) entry of final judgment on the dismissal of Defendants' "counterclaims" against them. (Doc. 84).

## II.   HOVORE'S MOTION FOR 54(b) JUDGMENT

In Defendants' FAACC (Doc. 55), Defendants included claims against Hovore alleging that during Hovore's representation of Prasad in this litigation, Hovore abused process and attempted to extort Defendants. Upon motion to dismiss by Hovore, the Court dismissed Defendants' "counterclaims" against Hovore with prejudice. Although the instant litigation between Prasad and Defendants continues, there are no pending claims by or against Hovore. Consequently, Hovore now moves for entry of final judgment on Defendants' claims under Rule 54(b). (Doc. 85).

Defendants' object and argue that "[a] dismissal for lack of subject matter jurisdiction must be without prejudice" because the dismissal did not resolve the merits of the underlying claims.[3] (Doc. 92 at 4–5). Defendants' argument is a red herring. Whether the Court dismissed Defendants' claims against Hovore with or without prejudice has no bearing on Hovore's Motion for Entry of Judgment under Rule 54(b) (Doc. 85). Defendants make no other specific argument against entering judgment under Rule 54(b). (*See* Doc. 92).

Rule 54(b) provides that when more than one claim for relief is presented in an action, or when multiple parties are involved, the district court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Judgment under Rule 54(b) is appropriate where there are distinct and severable claims and where immediate review of the adjudicated claims will not result in later duplicative proceedings at the trial or appellate level. *See Wood v. GCC Bend, LLC*, 422 F.3d 873,

---

[3] To the extent that Defendants are asking the Court to reconsider its decision to dismiss Defendants' claims with prejudice, such request is untimely. *See* LRCiv 7.2(g)(1) ("Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion."). Here, Defendants have not attempted to show good cause for their delay in seeking reconsideration. (*See* Doc. 92).

878–89 (9th Cir. 2005). Judgment under Rule 54(b) is not appropriate in routine cases where the risk of "multiplying the number of proceedings and of overcrowding the appellate docket" outweighs "pressing needs . . . for an early judgment." *MorrisonKnudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

Here, the first requirement for a Rule 54(b) certification is satisfied. The Court has finally and completely resolved Defendants' claims against Hovore. (Dec. 17, 2013 Order, Doc. 83 at 4–6, 13 (determining that Hovore is not a party in this litigation and dismissing Defendants' "counterclaims" against Hovore without leave to amend)).

The Court must next determine whether "there is any just reason for delay." *Wood*, 422 F.3d at 878. This in turn implicates "the historic federal policy against piecemeal appeals." *Id.* Relevant factors include (1) whether a Rule 54(b) judgment would result in unnecessary appellate review; (2) whether the claims finally adjudicated are separate, distinct, and independent of other claims; (3) whether appellate review of the adjudicated claims could be mooted by future developments in the case; and (4) whether an appellate court would have to decide the same issues more than once if there were subsequent appeals. *Id.* at 878 n. 2. These factors favor a Rule 54(b) certification.

First, certification will not result in unnecessary appellate review. Even if Defendants appeal this Court's ruling, the procedural issue of whether Hovore is a party in this litigation does not overlap with the remaining issues in this litigation (*e.g.* Prasad's breach of contract and related claims against Defendants).

Second, Defendants' claims against Hovore related to alleged extortion and abuse of process during Hovore's representation of Prasad in the instant litigation are separate and distinct from Prasad's underlying contract dispute with Defendants. Defendants' claims against Hovore do not arise out of the same facts as Prasad's claims against Defendants. (Doc. 83 at 8 (finding that the two sets of claims "bear no logical or factual relationship"). Moreover, the two sets of claims present completely separate legal theories against different kinds of Defendants. (*Compare* Pl.'s V. Compl., Doc. 1, *with*

Defs.' First Am. Answer, Countercl., Cross-cl., and Jury Demand, Doc. 55).

Third, review of Defendants' claims against Hovore will not be mooted by any future developments in the instant litigation, excepting a complete settlement. The Court can foresee no ruling on Prasad's claims that will alter or affect its ruling on Defendants' claims against Hovore.

Fourth, the appellate court will not be required to decide the same issues more than once if there are subsequent appeals. Any appeal related to Prasad's claims against Defendants will not raise the procedural issues that resulted in dismissal of Defendants' claims against Hovore.

In sum, the Court finds that Defendants' claims against Hovore have been finally and completely resolved and that there is no just reason to delay entry of final judgment in favor of Hovore. Accordingly, Hovore's Motion for Entry of Judgment under Rule 54(b) (Doc. 85) is granted.[4]

## III.    MOTIONS FOR SANCTIONS

Hovore has filed a Motion for Sanctions (Doc. 84) seeking recovery of reasonable attorneys' fees and expenses expended in defeating Defendants' "counterclaims" against Hovore in the FAACC. Hovore seeks sanctions against Defendants' counsel, Mr. Douglas, under 28 U.S.C. § 1927. (*Id.* at 4, 10). Additionally, Hovore seeks sanctions against Defendants, themselves, under either the Court's inherent power or A.R.S. § 12-349. (*Id.*). In a remarkably similar motion (*compare* Doc. 84, *with* Doc. 89), Prasad seeks recovery of its reasonable attorneys' fees and expenses expended in defeating Defendants' "counterclaims" against Prasad in the FAACC (Doc. 89 at 2–3, 7–8).

---

[4] The Court notes that Defendants' claims against Hovore consisted of five counts, but only Count V was brought by all Defendants—Counts I, II, III, and IV were brought by the Carlile Defendants only. Consequently, Defendants request that the Court specify that the entry of final judgment on Counts I, II, III, and IV is only against the Carlile Defendants. (Doc. 92 at 5–7). For the sake of clarity, the Court agrees and the final judgment shall so specify.

A.    **Hovore's Entitlement to Sanctions**

1.    **Sanctions Under 28 U.S.C. § 1927**

"Awards of attorneys' fees under 28 U.S.C. § 1927 are not frequently made." *Wight v. Achieve Human Servs., Inc.*, 2:12-CV-1170 JWS, 2012 WL 4359078 (D. Ariz. Sept. 21, 2012). Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions "must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). In the Ninth Circuit, "section [1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

Hovore argues that sanctions against Mr. Douglas, personally, are warranted because Mr. Douglas brought claims against Hovore in the FAACC "in bad faith and with the improper purpose of creating a conflict of interest between Hovore and Prasad." (Doc. 84 at 6–7). In lieu of presenting direct evidence of Mr. Douglas' subjective bad faith, Hovore asks the Court to objectively infer bad faith through the totality of Mr. Douglas' pleadings and litigation strategy, including Mr. Douglas' alleged frivolousness and recklessness in filing the FAACC. (*Id.* at 6–11). In Response, Mr. Douglas offers excuses for the various deficiencies in the FAACC and argues that Hovore's circumstantial evidence fails to demonstrate subjective bad faith.[5] (Doc. 90 at 11–14).

---

[5] Mr. Douglas also argues that Hovore's (and Prasad's) motion should be denied for failure to comply with the consultation requirement of LRCiv 54.2. (Doc. 90 at 9–11; Doc. 91 at 9–12). Mr. Douglas' argument, however, either misunderstands or

1    As a initial matter, Mr. Douglas appears to concede (*see* Doc. 90 (arguing bad

2    faith, but not multiplication of the proceedings)), and the Court finds, that the FAACC

3    multiplied the proceedings. After filing the original four "counterclaims"[6] against Hovore

4    (which were filed in CM/ECF as a "Third Party Complaint") in the Answer (Doc. 35),

5    Hovore (and Prasad) filed a motion to dismiss all four claims under Rules 12(b)(1),

6    12(b)(5), and 12(b)(6). (Docs. 43, 48). Hovore's (and Prasad's) motion put Mr. Douglas

7    on notice of the numerous pleading, jurisdictional, and factual deficiencies in the original

8    counterclaims. Nonetheless, instead of responding to the pending motions to dismiss,

9    Mr. Douglas (for Defendants) filed the FAACC characterizing the claims as "cross-

10   claims" in addition to "counterclaims," dropping Arizona-residing Defendants from the

11   four claims in an attempt to preserve diversity jurisdiction against Arizona-residing

12   Hovore, and adding a fifth federal cause of action (interstate transmission of extortionate

13   threats). Notably, not only were the procedural and jurisdictional changes futile, but

14   Defendants also subsequently withdrew the new federal claim and the original intentional

15   infliction of emotional distress claim *after* Hovore (and Prasad) filed motions to dismiss

16   the FAACC. (Doc. 76 at 13; Doc. 77 at 19). Thus, with respect to Hovore, the FAACC

17   unnecessarily and unreasonably multiplied the proceedings.

18   With regard to subjective bad faith, on this record, incompetence is at least as

19   likely an explanation of Mr. Douglas' pleading strategy as bad faith. As such, the Court

20   cannot immediately conclude that Mr. Douglas's litigation strategy evidences subjective

21   bad faith. However, because "[b]ad faith is present when an attorney knowingly or

22   recklessly raises a frivolous argument[,]" Hovore need not present direct evidence of

23

24   misrepresents the Court's previous Order. LRCiv 54.2, by its explicit terms, does not
     apply to motions for § 1927 sanctions. LRCiv 54.2(a). Nonetheless, because of the
25   Court's familiarity with motions for attorneys' fees that follow the formatting guidelines
     in LRCiv 54.2(c)–(e), the Court's previous Order requested that, "for the ease of the
26   Court," Hovore and Prasad "follow the *format* described in [LRCiv 54.2]" when filing
     the instant § 1927 motion. (Doc. 83 at 14 (emphasis added)). The Court did not and has
27   not ordered that these § 1927 motions follow the *procedural* requirements of LRCiv 54.2.

28   [6] Theft by extortion under Arizona Law, Extortion under California law, Abuse of
     Process, and Intentional infliction of emotional distress. (Doc. 35 at 41–50).

subjective bad faith to prevail. *Keegan*, 78 F.3d at 436; *id.* ("For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. . . . [R]eckless non-frivolous filings, without more, may not be sanctioned."). Thus, although Hovore rpesents no direct evidence of subjective bad faith, "a finding that [Mr. Douglas] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010); *see, e.g.*, *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("[R]ecklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions."); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (holding that "recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power").

### a.     Recklessness

First, the Court finds that, with respect to Hovore, Mr. Douglas filed the FAACC recklessly. As the Court noted in its previous Order, Mr. Douglas variously and inconsistently labeled the claims against Hovore (for extortion, abuse of process, and intentional inflection of emotional distress) as cross-claims, counterclaims, and a third-party complaint. (Doc. 83 at 4). By filing these claims, Mr. Douglas attempted to inject Hovore into this litigation with complete disregard for the Federal Rules of Civil Procedure. As the Court remarked, "it would be patently ridiculous for Defendants" to file a third-party complaint against Hovore because Defendants' claims are not allegations that Hovore is, in some way, liable to Defendants for Prasad's claims against Defendants." (*Id.* at 5). Furthermore, the Court explained that "[i]t is elementary" that a cross-claim or counterclaim against Hovore is impermissible because Hovore was not, respectively, a co-party of Defendants in this action or a party already opposing Defendants. (*Id.*). To the extent that Mr. Douglas, in good faith, believed that he could properly plead Defendants' claims against Hovore as counterclaims, even a cursory reading of the Rule 13(a) or (b) would have revealed that Mr. Douglas must first (or at least concurrently) properly join Hovore as an additional party to this litigation under

Rules 13(h), 19, or 20. Mr. Douglas' failure to even attempt to so join Hovore and follow the Federal Rules of Civil Procedure constitutes recklessness. Mr. Douglas' recklessness is especially apparent where, as here, the consequences of the haphazard and improper pleading was to create a conflict of interest between Prasad and Prasad's counsel, interrupting Hovore's representation of Prasad and requiring both Prasad and Hovore to obtain independent representation during the pendency of the improperly pleaded claims against Hovore.

Mr. Douglas' recklessness in filing the FAACC is also apparent from the jurisdictional gamesmanship in pleading diversity jurisdiction over the state law claims against Hovore. In the original "counterclaims" against Hovore, *all* Defendants, including the Arizona-residing Miller and Flat Irons Defendants, made all four claims against Arizona-residing Hovore. (Doc. 35). Next, Hovore's 12(b)(1) motion to dismiss explained the lack of complete diversity (as well as recognizing that Mr. Douglas had failed to even allege the citizenship of Hovore). In response, Mr. Douglas attempted to remedy the diversity-jurisdictional shortcomings of the original claims against Hovore by confusingly and inconsistently pleading that the diversity-based claims (Counts I, II, III, IV) were filed against Arizona-residing Hovore by *only* the California-residing Carlile defendants. Nonetheless, the same causes of action alleged that *all* Defendants brought the claims against Prasad (who possesses different citizenship than any defendant). (Doc. 55 at 42–55). As if this wasn't confusing enough, in the FAACC Mr. Douglas materially repeated the factual basis from the original claims, including allegations that Hovore's actions affected *all* Defendants equally.[7] (Doc. 55 at 30–42). Of course, it is possible that the Miller and Flat Irons Defendants decided to give up their claims against Hovore so that the Carlile Defendants' identical claims could preserve complete-diversity and continue. However, on the record before the Court, it is substantially more likely that Mr. Douglas' cynically pleaded confusing and inconsistent jurisdictional allegations in a

---

[7] The FAACC's factual allegations make no attempt to distinguish the Carlile, Miller, or Flat Irons Defendants, except for their state of residence. (Doc. 55 at 30–42).

1  transparent attempt to preserve diversity jurisdiction over the claims against Hovore.

2  Thus, the Court finds that Mr. Douglas' jurisdictional shenanigans in the FAACC also

3  demonstrate recklessness.

4  **b.    Frivolousness**

5  Second, the Court finds that the claims against Hovore in the FAAC were

6  frivolous.

> A "frivolous" filing is one "that is both baseless and made
> without a reasonable and competent inquiry." *See Holgate v.*
> *Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (construing
> "frivolous filing" in the context of Rule 11 and quoting
> *Keegan Mgmt.*, 78 F.3d at 434). That is, in the contexts of
> § 1927, frivolousness should be understood as referring to
> legal or factual contentions so weak as to constitute objective
> evidence of improper purpose.

12  *In re Girardi*, 611 F.3d at 1062. Although the Court did not rule on the merits of

13  Hovore's 12(b)(6) motion to dismiss (*see* Doc. 83), examination of the record and

14  Defendants' pleadings reveals that the extortion, abuse of process, and intentional

15  infliction of emotional distress claims against Hovore were both baseless and made

16  without a reasonable and competent inquiry. Initially, the Court notes that despite being

17  on notice of Hovore's arguments concerning the factual and legal deficiencies of the

18  original intentional infliction of emotional distress claim against Hovore, Mr. Douglas

19  repleaded a materially identical claim in the FAACC. (Docs. 35, 55). Then, after Hovore

20  reraised the same arguments in their subsequent motion to dismiss, Mr. Douglas

21  voluntarily withdrew the intentional infliction of emotional distress claim. (Doc. 76 at 13;

22  Doc. 77 at 19). Mr. Douglas has not explained how a reasonable and competent inquiry

23  between Hovore's original motion to dismiss and the FAACC failed to reveal the lack of

24  merit that his post-FAACC inquiry apparently revealed. Thus, the Court finds Mr.

25  Douglas' voluntary withdrawal of the claim to be evidence of the claim's legal or factual

26  weakness.

27  Not dissimilarly, the FAACC added Count V: Interstate Transmission of

28  Extortionate Threats in violation of federal law (and therefore implicating federal

- 11 -

question jurisdiction as an alternative to the diversity-jurisdiction alleged in the other four claims against Hovore). (Doc. 55 at 5). However, in Response to Hovore's motion to dismiss, Mr. Douglas voluntarily withdrew the claim. (Doc. 76 at 13; Doc. 77 at 19). In the context of this litigation, the implication is that Mr. Hovore conducted a reasonable and competent inquiry only *after* filing the FAACC, and then determined that the claim lacked a legal or factual basis.

With regard to the three claims that Mr. Douglas did not voluntarily withdraw post-motion to dismiss—extortion under Arizona and California law and abuse of process—the Court finds that the claims were both baseless and made without a reasonable and competent inquiry. Defendants predicate their "counterclaims" on Hovore's alleged extortionate communications during Hovore's attempts to resolve the underlying litigation. As the Court previously explained:

> On or about November 5, 2012, Prasad hired Hovore to pursue its legal remedies [for the underlying breach-of-contract dispute] and Hovore drafted and mailed a demand letter to Defendants. Among other things, the demand letter opines that Defendants' actions constituted a "criminal act" and states that if the $525,000 is not immediately returned, Prasad and the Guyana consulate will "jointly file a criminal action against [Defendants] with the Attorney General of Arizona." Defendants neither responded to the demand letter nor returned the $525,000. This litigation commenced on December 30, 2012 when, on behalf of Prasad, Hovore filed the Complaint against Defendants.
>
> . . .
>
> Defendants allege that on February 14, June 11, and June 14, 2013, Hovore communicated to Defendants that Hovore had been and intended to further communicate with the Arizona Attorney General's office regarding potential criminal charges against Defendants. On June 21, 2013, Defendants filed their original Answer, Counterclaims, and Jury Demand and served the pleading on Hovore with "Summons for Third-Party Defendants." The Counterclaim portion of Defendants' pleading contained four counts alleging that Prasad and Hovore extorted Defendants, abused the judicial process, and intentionally inflicted emotional distress on Defendants by "threating" to notify the Arizona Attorney General of Defendants' alleged criminal actions and acting on those "threats."

(Doc. 83 at 2–3 (internal citations omitted)). The Court has reviewed the pre-filing

demand letter (Doc. 1 at Ex. CC) and post-filing settlement emails (Doc. 55 at Exs. 2–4) and finds nothing extortionate or abusive about them. Although the Court may not agree that Hovore's aggressive "bull-dog" language is the most effective way to resolve a dispute, the complained-about communications appear to be nothing but normal attorney-to-attorney communications in a contentions dispute. Indeed, Hovore's warning of "scorched earth litigation" (Doc. 55 at Ex. 2) if settlement is not reached, while not congenial, is certainly not tantamount to extortion.

The demand letter's statement that Hovore "will file a criminal action against [Defendants] with the Attorney General of Arizona" (Doc. 1 at Ex. CC) and Hovore's later communications with the attorney general's office (Doc. 55 at Exs. 3–4) may at first appear troubling, but even a cursory examination of the underlying law demonstrates that Hovore's statement and actions are not problematic. As the Court previously noted, Prasad's complaint "included a claim under the civil portion of the Arizona Racketeering statute, Ariz. Rev. Stat. Ann. § 13-2314.04 (West 2013)." (Doc. 83 at 2). This is critical because A.R.S. § 13-2314.04(H) requires that "[a] person who files an action under this section shall serve notice and one copy of the pleading on the attorney general within thirty days after the action is filed with the superior court." Thus, had Mr. Douglas performed even a cursory examination of Arizona law, Mr. Douglas would have realized that Hovore's "threat" was not extortion, but rather an aggressive statement of intent to comply with Arizona law. Thus, a reasonable and competent inquiry by Mr. Douglas would have revealed that Defendants' extortion and abuse of process "counterclaims" against Hovore in the FAACC were wholly without merit. In sum, the Court finds that Defendants' "counterclaims" against Hovore in the FAACC are frivolous because they were so weak as to constitute objective evidence of improper purpose. *In re Girardi*, 611 F.3d at 1062.

Having found the FAACC both reckless and frivolous, the Court finds subjective bad faith on the part of Mr. Douglas. Additionally, the FAACC unnecessarily and unreasonably multiplied the proceedings. Accordingly, the Court finds that under § 1927,

- 13 -

1    Hovore is entitled to the reasonable attorneys' fees and expenses expended because of the

2    FAACC; the Court will order Mr. Douglas to personally satisfy said expenditures.[8]

3          Additionally, Hovore requests the fees and costs incurred in the briefing and

4    argument associated with this motion for sanctions. (Doc. 83 at 10). In support of

5    entitlement, Hovore cites to *Anderson v. Director, Office of Workers Compensation*

6    *Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996). *Anderson*, however, is specific to fee

7    applications under 42 U.S.C. § 1988. Therefore, the Court finds *Anderson* inapplicable to

8    Hovore's 28 U.S.C. § 1927 sanctions award for defending against the "counterclaims" in

9    the FAACC. Accordingly, the Court denies Hovore's request for fees and costs

10   associated with this motion for sanctions.

11         Additionally, the Court declines Hovore's request to use the Court's inherent

12   power and A.R.S. § 12-349 as grounds to make Defendants joint and severally liable for

13   the sanctions awarded against Mr. Douglas. (*See* Doc. 83 at 10). The record before the

14   Court contains no evidence suggesting that Defendants, themselves, played a role in Mr.

15   Douglas' vexatious litigation strategy against Hovore. Rather, Mr. Douglas avows that he

16   is solely responsible for the FAACC and that he, alone, should be subject to sanctions.

17   (Decl. of Mr. Douglas, Doc. 90-1 ¶ 37). Accordingly, Mr. Douglas, and Mr. Douglas

18   alone, will be personally liable for satisfying these § 1927 sanctions.

19         **B.      Prasad's Entitlement to Sanctions**

20         In a motion remarkably similar to Hovore's motion (*compare* Doc. 84, *with*

21   Doc. 89), Prasad seeks recovery of its reasonable attorneys' fees and expenses expended

22   in defeating Defendants' "counterclaims" against Prasad in the FAACC (Doc. 89 at 2–3,

23   7–8). Prasad advances nearly identical arguments of entitlement under 28 U.S.C. § 1927

24   or, alternatively, the Court's inherent power or A.R.S. § 12-349.

25

26         [8] To avoid duplicative or excessive sanctions, the Court declines to award Hovore
     additional sanctions under the alternative grounds of the Court's inherent power or
27   A.R.S. § 12-349.

28

1          **1.     Sanctions Under 28 U.S.C. § 1927**

2          Prasad argues that sanctions against Mr. Douglas, personally, are warranted

3    because Mr. Douglas brought claims against Prasad in the FAACC "in bad faith and with

4    the improper purpose of creating a conflict of interest between Hovore and Prasad and

5    that there was no legal or factual basis to bring or maintain these claims." (Doc. 89 at 5).

6    In lieu of presenting direct evidence of Mr. Douglas' subjective bad faith, Prasad asks the

7    Court to objectively infer bad faith through the totality of Mr. Douglas' pleadings and

8    litigation strategy, including Mr. Douglas' alleged frivolousness and recklessness in filing

9    the FAACC. (*Id.* at 5–8). In Response, Mr. Douglas offers excuses for the various

10   deficiencies in Defendants' pleadings and argues that Prasad's circumstantial evidence

11   inadequately demonstrates subjective bad faith. (Doc. 91 at 12–15).

12         Although Prasad advances remarkably similar arguments as Hovore and Mr.

13   Douglas advances a remarkably similar opposition, fundamental differences between

14   Prasad and Hovore require different analysis. Like Hovore, Prasad asks the Court to infer

15   subjective bad faith by finding that Mr. Douglas "knowingly or recklessly raise[d] a

16   frivolous argument." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986).

17         Also like with Hovore, the Court finds that Defendants' counterclaims against

18   Prasad were frivolous. Unlike with Hovore, however, the Court cannot find recklessness

19   through Mr. Douglas' jurisdictional gamesmanship because the FAACC did not engage

20   in such shenanigans with respect to Prasad.[9] Similarly, Mr. Douglas did not recklessly

21   disregard the Federal Rules of Civil Procedure with regard to Prasad in the FAACC

22   because, as an opposing party, Prasad could be the target of a counterclaim.

23   Fed. R. Civ. P. 13. Although the Court ultimately held that it did not have supplemental

24   jurisdiction over Defendants' counterclaims, such holding does not indicate recklessness

25   on this record. Hovore presents no evidence that Mr. Douglas knew or should have

26   known with certainty that the Court would not exercise supplemental jurisdiction.

27   _____

28         [9] As a foreign corporation, Prasad is completely diverse from all Defendants and
     jurisdiction had already been established in Prasad's complaint.

1   Meanwhile, Mr. Douglas avows that his research indicated that, in certain circumstances,

2   an abuse of process claim by a defendant against a plaintiff can be a compulsory

3   counterclaim.[10] (Decl. of Mr. Douglas, Doc. 91-1 ¶ 55).

4       Prasad appears to primarily rely on the Court's previous statement that "it strains

5   the limits of credulity that Defendants, in good faith, contend that their counterclaims

6   comprise part of the same constitutional 'case' as Prasad's original breach-of-contract

7   related complaint against Defendants." (Doc. 83 at 8). However, the Court did not find

8   that Mr. Douglas (or Defendants) actually acted in bad faith. On the record currently

9   before the Court, there simply is not enough evidence for the Court to conclude that Mr.

10  Douglas acted with subjective bad faith by knowingly or recklessly filing the frivolous

11  counterclaims against Prasad in the FAACC. Accordingly, the Court finds that Prasad is

12  not entitled to § 1927 sanctions against Mr. Douglas.

13      **2.      Sanctions Under the Court's Inherent Power or A.R.S. § 12-349**

14      Before awarding sanctions under its inherent powers, the Court must make an

15  explicit finding that counsel's conduct "constituted or was tantamount to bad faith."

16  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (quoting

17  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)). As explained above, the Court

18  does not find that Defendants or Mr. Douglas acted with bad faith when bringing the

19  FAACC counterclaims against Prasad. Accordingly, the Court finds that Prasad is not

20  entitled to sanctions under the Court's inherent power.

21      With regard to sanctions under A.R.S. § 12-349, the statute states:

22          Except as otherwise provided by and not inconsistent with
23          another statute, in any civil action commenced or appealed in
            a court of record in this state, the court shall assess reasonable
            attorney fees, expenses and, at the court's discretion, double
24          damages of not to exceed five thousand dollars against an

25  _____

26  [10] Mr. Douglas cites to *Pochiro v. Prudential Inc. Co. of Amer.*, 827 F.2d 1246,
    1252–53 (9th Cir. 1987). In *Pochiro*, the defendants alleged that the plaintiff's initiation
27  of the litigation was, itself, an abuse of process. *Id.* Thus, the court held that the
    defendants' abuse of process counterclaim was compulsory in the litigation precipitated
    by the filing of plaintiff's lawsuit against the defendants. *Id.* Although *Pochiro* is easily
28  distinguishable and not applicable to the instant litigation, Mr. Douglas' citation gives
    some support to his claim that he brought the counterclaims against Prasad in good faith.

- 16 -

attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:

1. Brings or defends a claim without substantial justification.

2. Brings or defends a claim solely or primarily for delay or harassment.

3. Unreasonably expands or delays the proceeding.

4. Engages in abuse of discovery.

A.R.S. § 12-349(A). Furthermore, "[f]or the purposes of this section, 'without substantial justification' means that the claim or defense is groundless and is not made in good faith." A.R.S. § 12-349(F).

Initially, the Court notes that it is unclear if this state statute can even be applied by this federal Court sitting in an Arizona-law based diversity action. The District of Arizona has recently applied A.R.S. § 12-349 as a mandatory sanction against a party for its litigation conduct, specifically unreasonably expanding or delaying the proceedings. *Fleck v. Quality Loan Serv. Corp.*, No. CV-10-8256-PCT-DGC, 2012 WL 2798792, at *2 (D. Ariz. July 9, 2012) ("Under Arizona law—which applies in this diversity action—a court 'shall' award attorneys' fees when an attorney unreasonably expands or delays the proceeding." (citing A.R.S. § 12–349(A)(3))).

In contrast, in a case involving frivolous claims, the District of Arizona declined to apply A.R.S. § 12-349. *Stilwell v. City of Williams*, 3:12-CV-8053-HRH, 2014 WL 1654530 (D. Ariz. Apr. 25, 2014) ("The Ninth Circuit has held that this state law statute, which the court of appeals characterized as a 'sanctions statute' does not apply to actions in federal court, even if the court is sitting in diversity." (citing *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837–38 (9th Cir. 2001)).

The above cases notwithstanding, in 2001, the Ninth Circuit Court of Appeals specifically examined a federal court's imposition of sanctions under A.R.S. § 12-349 on a party for improper litigation tactics in a bankruptcy proceeding and explicitly held that the Arizona law did not apply. *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837–38

1    (9th Cir. 2001). The Ninth Circuit explained:

2           It is well established that "[u]nder the *Erie* doctrine [*Erie R.*
3    *Co. v. Tompkins*, 304 U.S. 64 (1938)], federal courts sitting in
     diversity apply state substantive law and federal procedural
4    law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415,
     427 (1996). "Classification of a law as 'substantive' or
5    'procedural' for *Erie* purposes is sometimes a challenging
     endeavor." *Id.* When it comes to attorneys' fees, we have
6    declared that "[a] federal court sitting in diversity applies
     state law in deciding whether to allow attorney's fees when
7    those fees are connected to the substance of the case." *Price
     v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992); *see also Kona
8    Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.
     2000). Thus, attorneys' fees may be awarded by a district
9    court when they are part of the state's substantive, rather than
     procedural, requirements. *See, e.g.*, *Klopfenstein v. Pargeter*,
10   597 F.2d 150, 152 (9th Cir. 1979) (explaining that state law
     governs the question of attorneys' fees in diversity actions
11   and holding that Alaska R. Civ. P. 82 authorized the district
     court's award of attorneys' fees to the prevailing party).
12   However, when fees are based upon misconduct by an
     attorney or party in the litigation itself, rather than upon a
13   matter of substantive law, the matter is procedural. Imposition
     of sanctions in that instance "depends not on which party
14   wins the lawsuit, but on how the parties conduct themselves
     during the litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32,
15   53 (1991). . . .

16          In other words, the federal courts must be in control of their
17   own proceedings and of the parties before them, and it is
     almost apodictic that federal sanction law is the body of law
18   to be considered in that regard. Anything less would leave
     federal courts subject both to the strictures of state statutes,
     and to state court judicial construction of those statutes. And
19   the fact that an action is based on diversity, or is otherwise
     driven by substantive state law, should make no difference
20   whatsoever. As we said long ago, "[w]hen an attorney
     appears before a federal court, he is acting as an officer of
21   that court, and it is that court which must judge his conduct."
     *Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964). . . .
22   Therefore, the bankruptcy court erred when it relied upon an
     Arizona statute for the purpose of imposing sanctions upon
23   Galam; if sanctions were to be imposed at all, it had to be
     under the policies and procedures delineated under federal
24   law.

25   *Id.* at 837–38.

26          Of particular significance to the instant motion for sanctions, in *dicta*, the *In re*

27   *Larry's Apartment* court specifically explained that parties in federal courts should rely

28   on 28 U.S.C. § 1927 to govern their behavior, not state court sanctions statutes.

- 18 -

[T]he proper body of law and the one on which parties in federal court can and should adhere to and rely upon is federal, not state, law. That is not only a question of protecting the federal courts' power over their own proceedings, but also a question of fairness to those who are obliged to conform to federal standards when in federal court. For example, [Fed. R. Civ. P.] 11 contains prerequisites and protections for parties, who are accused of violating its strictures, and parties should be able to rely upon those in federal court proceedings. The same can be said about the scope of and protections offered by 28 U.S.C. § 1927.

*In re Larry's Apartment*, 249 F.3d at 839.

The Court finds the Ninth Circuit's analysis of the issue in *In re Larry's Apartment* both persuasive and binding on this District Court. Therefore, the Court finds that A.R.S. § 12-349 is inapplicable here. But even if A.R.S. § 12-349(A) applied here, the Court would decline to award Prasad attorneys' fees because the Court has not found that Defendants brought their counterclaims in bad faith. A.R.S. § 12-349(A)(1), (F). Furthermore, with regard only to Prasad, the Court has not found that Defendants' counterclaims were brought "solely or primarily for delay or harassment," A.R.S. § 12-349(A)(2), or "unreasonably expands or delays the proceedings," A.R.S. § 12-349(A)(3). In bringing these counterclaims against Prasad, Defendants may have "strain[ed] the limits of credulity" that the claims were brought in good faith (Doc. 83 at 8), but on the record before the Court, and only with regards to Prasad, the Court does not find that Defendants and Mr. Douglas crossed the line into bad faith. Accordingly, the Court finds that Prasad is not entitled to sanctions under A.R.S. § 12-349.

### B.     Reasonableness of Hovore's Attorneys' Fees and Expenses

Hovore's Motion seeks $38,754.40 in fees and $67.14 in costs. However, Section 1927 authorizes only reasonable attorneys' fees, expenses, and costs "incurred because of" the sanctioned conduct. 28 U.S.C. § 1927. Here, the Court sanctions Mr. Douglas for recklessly filing frivolous claims against Hovore. Therefore, the Court must examine Hovore's request and exclude any fees or costs not incurred because of Defendants' claims against Hovore. Furthermore, the Court must exclude all unreasonable attorneys' fees or expenses.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Attorneys' Fees and Costs Incurred because of the Frivolous Claims Filed Against Hovore

Hovore seeks a total of $38,754.40 in attorneys' fees and $67.14 in costs on behalf of the law firm of Lewis, Brisbois, Bisgaard & Smith, LLP. (Doc. 84 at 2). This sum represents a total of 214.8 hours[11] expended by a combination of partner Todd Rigby,[12] associate Michael F. Edgell,[13] and paralegal Donna Altobello.[14] In their briefs, both Hovore and Mr. Douglas appear to assume that Hovore engaged Lewis, Brisbois, Bisgaard & Smith, LLP solely to defend Hovore against Defendants' claims. (*See* Docs. 84, 90, 95). Indeed, the time entries submitted by Hovore accrued during the period of June 27, 2013 through December 2, 2013, which the Court notes is a period wholly contained within the pendency of Defendants' claims against Hovore.[15] Thus, the Court finds that the requested 214.8 hours were incurred because of the frivolous claims filed against Hovore.

### 2.   Reasonableness

In determining a reasonable attorney's fee, the Court must begin with the "lodestar" figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the lodestar is the reasonable fee. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986). When deciding the reasonable number of hours expended and

---

[11] Hovore's briefs incorrectly state a total of 463.4 hours. However, the Court has thoroughly reviewed the submitted time-entries and found several clerical errors. For example, a June 28, 2013 entry for Mr. Rigby lists 130.0 hours when the correct entry is 0.6 hours. (Docs. 84-1, 90-1, 95-1). Similarly, a July 17, 2013 entry for Mr. Rigby states 120.0 hours when the correct entry is 1.2 hours. (*Id.*). Upon careful review, the Court calculates a total of 214.8 hours expended.

Additionally, the Court notes that the correct fee request based on the corrected 214.8 hours is $38,392.00.

[12] 30.4 hours.

[13] 179.8 hours.

[14] 4.6 hours.

[15] Mr. Douglas, on behalf of Defendants, filed the original claims against Hovore on June 21, 2013 (Doc. 35) and the FAACC on August 2, 2013 (Doc. 55). The Court issued its Order dismissing the claims on December 17, 2013 (Doc. 83).

1
2
3
4
5
6
7
8
9

the reasonableness of the hourly rate, a court may consider: "(1) the novelty and complexity of the issues[;] (2) the special skill and experience of counsel[;] (3) the quality of representation[;] and (4) the results obtained." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989). Additionally, "[i]n determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the Court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied*, *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (internal citations omitted).

10
11
12

*Moshir v. Automobili Lamborghini Am. LLC*, 927 F. Supp. 2d 789, 797 (D. Ariz. 2013). The Court will adhere to these factors in its analysis of the reasonableness of Hovore's request for attorneys' fees and costs.

13

### a.    Reasonable Hourly Rate

14
15
16
17
18
19
20
21
22
23
24

Hovore submits that the hourly rates charged in this case were: $215 for Mr. Rigby (Partner); $175 for Mr. Edgell (Associate); and, $80 for Ms. Altobello (Paralegal). (Doc. 84 at 12). Mr. Douglas generally "dispute[s] the hourly rate[s] asserted by the Hovore Parties" on the grounds that Hovore has not provided a complete copy of the written fee agreement between Hovore and Lewis, Brisbois, Bisgaard & Smith, LLP. (Doc. 90 at 16–17; Decl. of Mr. Douglas, Doc. 90-1 at ¶ 9). Specifically, Mr. Douglas argues that LRCiv 54.2(d)(2) requires Hovore to submit a "complete copy of any written fee agreement, or a full recitation of any oral fee agreement," without which the Court has no basis to determine if the hourly rates represented are true or accurate. (*Id.*). Critically, however, LRCiv 54.2(d)(3) also provides that "[i]f no fee agreement exists, then counsel must attach a statement to that effect."

25
26
27
28

Here, Hovore has submitted the declaration of Mr. Edgell explaining that no written fee agreement between Hovore and Lewis, Brisbois, Bisgaard & Smith, LLP exists because Lewis, Brisbois, Bisgaard & Smith, LLP's hourly rates for this representation were negotiated directly by Hovore's malpractice insurer. (1st Decl. of Mr.

1   Edgell, Doc. 84-1 ¶ 6; 2nd Decl. of Mr. Edgell, Doc. 95-1 ¶ 6). Although Mr. Douglas

2   argues that Mr. Edgell's declaration is vague and evasive, the Court disagrees.

3   Furthermore, the Court notes that Mr. Edgell declares (and Mr. Douglas does not dispute)

4   that all of the fees identified in the itemized statement are fees that have been billed and

5   which have been paid or are expected to be paid. There being no evidence to the contrary,

6   the Court is satisfied that the rates represented—$215, $175, and $80—are the true rates

7   for the instant representation.

8       Mr. Douglas has not made specific arguments that the rates represented— Partner

9   $215; Associate $175; and Paralegal $80—are unreasonably high. (*See* Doc. 90).

10   Additionally, the Court has considered the skill and experience of Mr. Rigsby, Mr.

11   Edgell, and Ms. Altobello, as well as the novelty and complexity of the issues, the quality

12   of the representation, and Hovore's complete success.[16] Upon consideration of these

13   factors and the Court's experience with hourly rates charged in the Phoenix legal

14   community, the Court finds the rates represented—Partner $215; Associate $175; and

15   Paralegal $80—are reasonable and will use these rates in the lodestar calculation. *See*

16   *Fleck v. Quality Loan Serv. Corp.*, CV-10-8256 PCT-DGC, 2012 WL 2798792, at *2 (D.

17   Ariz. July 9, 2012) (setting an associate hourly rate at $250 and a paralegal hourly rate at

18   $125).

19           **b.       Reasonable Number of Hours Expended**

20       Hovore provides the Court with 220 time-and-task entries totaling 214.8 hours.

21   (Doc. 84-1). Citing a variety of reasons, Mr. Douglas objects to all but 28 entries and

22   argues that a total of 195.7 hours[17] should be removed from the fee-award as

23

24       [16] Incomprehensibly, Mr. Douglas argues that Hovore did not completely prevail
     because the Court denied (Doc. 83) Hovore's motion to strike the "counterclaims" in the

25   FAACC. Mr. Douglas' argument defies logic and common sense because, in fact, the
     Court dismissed Defendants' "counterclaims" against Hovore with prejudice. (*Id.*). Thus,

26   the Court effectively mooted Hovore's motion to strike by granting Hovore's alternative
     motion for greater relief.

27       [17] Mr. Douglas' briefing claims 122.6 hours are excessive (Doc. 90 at 15), but at
     the end of his table of objections, Mr. Douglas states that his objections total to 155.6

28   hours (Doc. 90-1 at 59). Upon review of Mr. Douglas' table of objections, however, the
     Court calculates that Mr. Douglas actually requests that the Court exclude a total of 195.7

1   unreasonable. (Doc. 90 at 14–19; Decl. of Mr. Douglas, Doc. 90-1 at 3–12, ¶¶ 6–16; Doc.

2   90-1 at Ex. A). Mr. Douglas' objections, however, generally lack specificity and copy-

3   paste stock language from one or more of several categories. The Court notes that

4   because Mr. Douglas' copy-pasted language lacks specificity to the specific time-and-ask

5   entry objected to, the Court is forced to speculate as to Mr. Douglas' actual grounds for

6   grievance. Nonetheless, the Court has thoroughly reviewed Mr. Douglas' objections and

7   believes the following to be a fair summary of Mr. Douglas' various objections:

8   •   Excessive: Mr. Douglas objects that many tasks, especially research tasks should

9   not be difficult or time-consuming for an ordinary attorney. In essence, Mr. Douglas

10   argues that if his claims really were frivolous, than an ordinary attorney should have been

11   able to defeat them with little to no research.[18]

12   •   Not Necessary: Mr. Douglas objects that the task was not required by the scope of

13   representation. For example, Mr. Douglas objects to Mr. Rigby's July 10, 2013 entry of

14   0.4 hours for "outline additional potential conflict issues to address with ethics counsel

15   focusing on current claims and anticipated worst case scenarios" because there were not

16   yet "causes of action claimed for ethical violations in this litigation."[19] (Doc. 90-1 at 10–

17   11). As another example, Mr. Douglas objects to Mr. Edgell's August 1, 2013 entry of

18   0.3 hours for "plan and prepare for: develop strategy for witness depositions" because

19   "Hovore parties did not notice any depositions."[20] (*Id.* at 18).

20

21   hours.

22   [18] However, frivolity does not automatically equate to simplicity of research, analysis, and brief-writing. This is especially true here because Defendants indiscriminately and confusingly attempted to plead cross-claims, counterclaims, and a third-party complaint while realigning parties to engage in jurisdictional shenanigans. Additionally, Mr. Douglas neglects to mention that in his own declaration, he declares that he spent over 35 hours researching Defendants' claims (Decl. of Mr. Douglas, Doc. 90-1 ¶¶ 19, 26)—an amount not dissimilar to the amount he claims is excessive for Hovore's counsel.

26   [19] However, Defendants' claims included extortion and abuse of process; both claims implicated ethical rules and a potential conflict of interest with Hovore's client, Prasad.

28   [20] However, Hovore's counsel did attend and participate in depositions of various defendants.

- • Block billing: Mr. Douglas objects that several entries of multiple hours constitute block billing. For example, Mr. Douglas claims that Mr. Edgell's September 29, 2013 entry of 4.5 hours for "dispositive motions: draft/revise: draft reply in support of motion to dismiss" is a "block-billed entry that should be excluded.[21]

- • "Attorney performed lengthy research that paralegal should have performed": Mr. Douglas objects to numerous research-time entries that a paralegal, not Mr. Edgell (an associate) should have performed the research. For example, Mr. Douglas objects to Mr. Edgell's September 19, 2013 entry of 1.2 hours for "dispositive motions: research: begin researching cases cited in opposing briefs."[22] (Doc. 90-1 at 44).

- • Vague and Ambiguous: Mr. Douglas objects that various entries do not contain enough specificity for the Court to determine the reasonableness of the hours spent on the task. For example, Mr. Douglas objects to Mr. Edgell's September 23, 2013 entry of 1.1 hours for "analysis/strategy: review/analyze: analyze documents provided by client to determine if they are responsive to requests for production and are discoverable."[23] (Doc. 90-1 at 45–46).

- • Communications with Client: Mr. Douglas objects to every single entry for communicating with Hovore (the client) on the grounds that the entries provide "insufficient evidence" and an "incomplete description" under LRCiv 54.2(e)(2)(A) (requiring telephone calls identify all participants and the reason for the telephone call). For example, Mr. Douglas objects to Mr. Edgell's August 19, 2013 entry of 0.1 hours for

---

[21] However, an entry is "block-billed" only if it contains multiple individual and unrelated tasks. *See* LRCiv 54.2(e)(1)(B). An entry is not "block-billed" simply because it ascribes multiple hours to a single task.

[22] However, Mr. Douglas does not explain why some research is okay for attorneys and other research must be performed by a paralegal. Further, the Court notes that reasonable legal research conducted by an attorney is, of course appropriate and recoverable.

[23] However, the Court finds that this entry, like the other "vague and ambiguous" entries, provides sufficient information for the Court to determine its reasonableness.

"analysis and advice communicate (with client): communicate with client redaction."[24] (Doc. 90-1 at 33).

• Clerical Task: Mr. Douglas objects to numerous motion and brief-drafting entries that a clerical employee, not an attorney, should have performed the task. For example, Mr. Douglas objects to a July 12, 2013 entry of 1.5 hours for "dispositive motions: draft/revise draft final revisions to motion to dismiss in preparation for filing." (Doc. 90-1 at 14).[25]

• Duplicative: Mr. Douglas objects that several entries are duplicative of previous entries and work. For example, Mr. Douglas objects that Ms. Altobello's the August 2, 2013 entry of 1.1 hours for "fact investigation/development: review/analyze: review file to prepare initial disclosure statement" is duplicative of time entries on July 29 and 31, 2013. (Doc. 90-1 at 18–19).[26]

• Insufficient Evidence and No Declaration by Timekeeper: Mr. Douglas objects to every single entry from Mr. Rigby and Ms. Altobello because Hovore did not submit a declaration from either timekeeper. Instead, Hovore, submitted a declaration from Mr. Edgell attesting to the accuracy of the timekeeping entries from Mr. Rigby and Ms. Altobello.[27]

---

[24] However, Hovore replies that the various communications are privilege and and that such regular communications, which total only a few hours over a multi-month representation, are legitimate legal services. (Doc. 95-1 at 56). LRCiv 54.2(e)(2) explains that the description must balance providing sufficient information for the Court to determine reasonableness with sensitivity for attorney-client privilege and attorney work-product doctrine. In order to protect this balance, LRCiv 54.2(e)(2) makes a reduction in the award for such insufficiencies discretionary, not mandatory. LRCiv 54.2(e)(2) ("the Court *may* reduce the award accordingly") (emphasis added).

[25] However, Mr. Douglas does not explain why some motion and brief drafting is okay for attorneys and other drafting must be performed by clerical staff. Further, the Court notes that reasonable motion and brief drafting conducted by an attorney, including editing and revising, is, of course appropriate and recoverable.

[26] However, entries on similar topics or with similar descriptions are not necessarily duplicative because a single task may not be performed in a single contiguous sitting. The Court, of course, independently analyzes all time entries and excludes duplicative entries.

[27] However, LRCiv 54.2 only requires a declaration from moving counsel (Mr. Edgell). LRCiv 54.2(d)(4). Furthermore, said declaration must include the "relevant

1    Having thoroughly reviewed the submitted time-and-task entries, Mr. Douglas'

2    objections, and Hovore's responses,[28] the Court overrules Mr. Douglas' objections except

3    as follows:

4    •    Mr. Edgell's July 17, 2013 entry of 1.1 hours for "prepare notice of errata and

5    amended motion to dismiss." (Doc. 90-1 at 16). It is not reasonable to charge Mr.

6    Douglas for Mr. Edgell's drafting error.

7    •    Mr. Edgell's September 7, 2013 entry of 0.4 hours for "research basis for stay of

8    proceedings pending outcome of motion to dismiss." (Doc. 90-1 at 41). The Court had

9    already denied a stay request on August 21, 2013. Thus, this time was unreasonable.

10   •    Mr. Edgell's October 28, 2013 entry of 0.3 hours for "analyze request for

11   admissions issued by opposing parties to Prasad," and November 11, 2013 entry of 0.1

12   hours for "analyze Prasad responses to requests for admissions." (Doc. 90-1 at 58).

13   Although Defendants' claims against Hovore forced Hovore to participate in limited

14   discovery, this entry appears specific to Prasad's discovery, not Hovore's. Thus, this time

15   was unreasonable.

16   •    Mr. Rigby's December 2, 2013 entry of 0.2 hours for "review file re . . . likelihood

17   of oral argument and potential ruling before the end of the year," and of 0.7 hours for

18   "outline oral argument considerations and comprehensive approach." (Doc. 90-1 at 58–

19   59). No party requested oral argument on the motion to dismiss and the Court did not

20   indicate or otherwise schedule oral argument. Thus, this time was unreasonable.

21      In sum, the Court finds all of the submitted time-and-task entries reasonable

22   except for the six entries described above. Therefore, the Court excludes only 1.9 hours

23   of Mr. Edgell's time and 0.9 hours of Mr. Rigby's time. Accordingly, the Court finds that

24   Mr. Rigby expended 29.7 reasonable hours, Mr. Edgell expended 177.9 reasonable hours,

25

26   qualifications, experience, and case-related contributions of *each* attorney for whom fees
     are claimed." (LRCiv 54.2(d)(4)(A).

27

28   [28] The Court is also mindful of the numerous issues raised by Defendants' claims,
     and the added complexity engendered by Mr. Douglas' jurisdictional shenanigans and the
     confusing nature of the FAACC's claims against Hovore.

1   and Ms. Altobello expended 4.6 reasonable hours.

2                       **c.      Lodestar Calculation**

3        Mr. Rigby expended 29.7 reasonable hours at the partner rate of $215 per hour, for

4   a total of $6385.50.  Mr. Edgell expended 177.9 reasonable hours at the associate rate of

5   $175 per hour, for a total of $ 31,132.50. Ms. Altobello expended 4.6 reasonable hours at

6   the paralegal rate of $80 per hour, for a total of $391.00. These three sums yield a final

7   lodestar calculation of $37,909.00. "Because there is a 'strong presumption' that the

8   lodestar is the reasonable fee, *Moshi*r, 927 F. Supp. 2d at 805 (quoting *Pennsylvania*, 478

9   U.S. at 565), the Court finds $37,909.00 in total attorneys' fees claimed for Lewis,

10  Brisbois, Bisgaard & Smith, LLP to be reasonable.[29]

11                      **d.      Costs**

12       Hovore seeks $67.14 in costs expended in the prosecution of this matter. (Doc. 84

13  at 2; Doc. 84-1 at 21). Mr. Douglas objects that the expenses should be excluded because

14  Hovore has not attached appropriate supporting documentation, such as receipts. (Doc. 90

15  at 20). Indeed, Hovore's only support is the itemized list of six expenses (Doc. 84-1 at

16  21) and Mr. Edgell's declaration that the costs were expended (Doc. 84-1 at Ex. 2 ¶ 10;

17  Doc. 95-1 at Ex. 1 ¶ 12). LRCiv 54.2(e)(3) provides the Court discretion to disallow costs

18  or expenses that are not verified by the party seeking them. LRCiv 54.2(e)(3) ("Failure to

19  itemize and verify costs may result in their disallowance by the Court." Because Hovore

20  has not submitted verification of the six itemized expenses, such as receipts or invoices,

21  the Court excludes them. Accordingly, the Court awards Hovore $0.00 in costs.

22

23  _____

24       [29] To the extent that Mr. Douglas' argues that he "is not financially able to pay
    attorney fees or costs in this matter, such that ordering sanctions will not effectively serve
25  to deter future violations," the Court remains unpersuaded. Mr. Douglas' inchoate
    argument relies exclusively on his declaration that he has, and has been, "experiencing
26  extreme financial hardship such that [he] is not able to pay any attorney fees or costs
    without increasing [his] extreme financial hardship." (Decl. of Mr. Douglas, Doc. 90-1
27  ¶ 38). Mr. Douglas has not, however, actually presented any proof of extreme hardship,
    such as an affidavit, testimony, or other evidence. Consequently, the Court has no basis
28  on which to objectively find that Mr. Douglas suffers from extreme hardship such that the
    Court should use its discretion to reduce the fee award Hovore is otherwise entitled to
    receive.

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Hovore's Motion for Entry of Judgment under Rule 54(b) (Doc. 85) is GRANTED. Final judgment is entered in favor of the Hovore Defendants and against the Carlile Defendants with respect to Counts I, II, III, and IV. Final judgment is entered in favor of the Hovore Defendants and against all Defendants with respect to Count V.

**IT IS FURTHER ORDERED** that Hovore's Motion for Sanctions under 28 U.S.C. § 1927 (Doc. 84) is GRANTED. Hovore is awarded attorneys' fees in the amount of $37,909.00 from attorney Frederic M. Douglas.

**IT IS FURTHER ORDERED** that Prasad's Motion for Sanctions (Doc. 89) is DENIED.

Dated this 23rd day of September, 2014.

James A. Teilborg
Senior United States District Judge