**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R. Prasad Industries, | No. CV-12-08261-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Flat Irons Environmental Solutions Corporation, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Leave to File a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Request to Transfer the Case to the Central District of California ("Motion for Leave") (Doc. 213). The Court now rules on the motion.

## I.    BACKGROUND

On August 6, 2017, Defendant Robert Carlile and his spouse (collectively "Carlile") requested leave of the Court to file a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 213; Doc. 214). Plaintiff submitted its Response in Opposition (Doc. 217) on August 7, 2017 and Defendants submitted their Reply (Doc. 219) on August 11, 2017.

This case arose from "an alleged agreement for the purchase and sale of urea fertilizer between Plaintiff, R. Prasad Industries, a Guyanese company that sells and distributes fertilizer, and Defendant Flat Irons Environmental Solutions Corporation, an Arizona corporation owned and operated by Defendants Gary Miller and Bob Carlile."

(Doc. 148 at 1 (footnote omitted)). The Court has previously discussed the facts in this case at length and need not repeat them here. (*See id*. at 1-4).

## II.     REQUEST FOR LEAVE OF THE COURT

This motion comes over four years after the start of litigation in this case and over three years after the deadline set by the Court's Scheduling Order that "all dispositive motions shall be filed no later than June 28, 2014." (Doc. 46 at 4). Defendants explain that "Defendants did not file a motion contesting personal jurisdiction as to the Carlile Defendants as the law on minimum contacts was not certain at the time required to make such a motion." (Doc. 219 at 4).

### A.     Personal Jurisdiction

Defendants argue that the United States Supreme Court decision in *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County* (hereafter "*Bristol-Myers Squibb*"), decided June 19, 2017, "significantly alters the analysis" regarding the exercise of personal jurisdiction over a non-resident Defendant. (Doc. 213 at 2 (citing 137 S. Ct. 1773, 1776 (2017))). The Supreme Court, however, stated therein that "[s]ettled principles of specific jurisdiction control" the case. *Bristol-Myers Squibb*, 137 S. Ct. at 1776. There, "[a] group of plaintiffs—consisting of 86 California residents and 592 residents from 33 other States—filed eight separate complaints in California Superior Court, alleging that [Defendant's product] had damaged their health." *Id*. at 1778. This case is distinguishable on its face from *Bristol-Myers Squibb*.

Here, a single plaintiff brought suit against Defendants in the forum in which the corporate defendant—which the Court has already granted summary judgment against (Doc. 148)—was incorporated and maintained its principal place of business (*See* Defendants' Answer, Doc. 35 at ¶¶ 2; *see also* Doc. 148). Defendant Carlile was not only "a director and shareholder of Defendant corporation," but was also admittedly "listed as the president of the company" (*Compare* Defendants' Answer, Doc. 35 at ¶¶ 5 *with* Doc. 217-1 at 3). Elsewhere, Defendant Carlile held himself out as "CEO" of the corporate defendant with an Arizona address. (*See* Doc. 217-2). Holding one's self out as an officer

in an Arizona corporation is sufficient to subject an individual to specific jurisdiction in Arizona for torts allegedly committed in connection with the Arizona corporation. *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1319-24 (9th Cir. 1998) (holding that an Illinois resident operating over the internet from Illinois was subject to specific jurisdiction in California for registering a California company's trademark and effectively acting as the California company online). Nothing in *Bristol-Myers Squibb* alters this analysis.

Rather, the Supreme Court simply conducted a "straightforward application in this case of settled principles of personal jurisdiction[.]" *Bristol-Myers Squibb*, 137 S. Ct. at 1783. There, non-resident plaintiffs asked a court to subject a non-resident corporation to personal jurisdiction in California based on nationwide advertising and distribution efforts. *See id*. at 1785. The Supreme Court reiterated therein that there must be an "affiliation between the forum and the underlying controversy" beyond regularly conducting sales in and operating within a given forum in order for a court to exercise personal jurisdiction over a non-resident, corporate defendant. *Id*. at 1781 (internal citation omitted). *Bristol-Myers Squibb* did not address the issue of whether an individual may be subject to personal jurisdiction in a forum based on the individual's affiliation with a resident corporation, as is at issue here. Accordingly, Defendants' reliance on *Bristol-Myers Squibb* as the basis for challenging personal jurisdiction at this late juncture is misplaced and does not alter the Court's jurisdictional analysis in this case.

Furthermore, the requirement of personal jurisdiction may be explicitly or implicitly waived. *See, e.g.*, *Astronics Advanced Elecs. Sys. Corp. v. Lufthansa Technik AG*, 561 Fed. Appx. 605, 606 (9th Cir. 2014) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). "The defense of lack of personal jurisdiction[] may be waived as a result of the course of conduct pursued by a party during litigation." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998) (holding that a party can waive personal jurisdiction by actively participating in litigation). This rule

applies even "when the party raises the defense but does not pursue it further" in a timely manner. *Craters & Freighters v. Benz*, 465 Fed. Appx. 719 (9th Cir. 2012) (citing *Peterson*, 140 F.3d at 1317-18).

Here, Defendants set forth lack of personal jurisdiction as a defense "as to the non-corporate and/or non-Arizona-resident defendants" in Defendants' Answer (Doc. 35 at 27) and again in Defendants' Second Amended Answer (Doc. 87 at 11). Following these 2014 filings, however, Defendant Carlile actively participated in this litigation through dozens of motions and pleadings cited by Plaintiff before filing the instant motion. (*See* Doc. 217 at 2-3). Defendants concede that the instant motion is untimely in attempting to justify why this motion was not filed "at the time required to make such a motion." (Doc. 219 at 4). Accordingly, the Court finds that Defendants waived the defense of lack of personal jurisdiction by submitting to jurisdiction in this Court based on their "course of conduct pursued" during this matter. *See Peterson*, 140 F.3d at 1318.

### B. Venue

In the alternative, Defendants request that the Court transfer this matter to the Central District of California. (Doc. 213 at 4).

### 1. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The purpose of the change of venue statute is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).

"When determining whether a transfer is proper, a court must employ a two-step analysis. A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). "In order that the case 'might have been brought' in the proposed transferee district, the court

there must have subject matter jurisdiction and proper venue, and the defendant must be amenable to service of process issued by that court." *Kachal, Inc. v. Menzie*, 738 F. Supp. 371, 372-73 (D. Nev. 1990).

Next, a court must consider whether the proposed transferee district is a more suitable choice of venue based upon the convenience of the parties and witnesses and the interests of justice. *See Park*, 964 F. Supp. 2d at 1093. The Ninth Circuit Court of Appeals has enumerated factors that a court may consider in making this determination:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). No single factor is dispositive. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

The party seeking a change of venue bears the burden of establishing that a transfer of the case is proper. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

## 2. Analysis

Even if this case could have been brought in the Central District of California, it is not appropriate for this Court to transfer the case. All parties have expended over four years litigating this case in the District of Arizona, so a transfer on the eve of trial would be at odds with the purpose of the change of venue statute: To "prevent the waste of time, energy and money" and to prevent "unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616 (1964). That hour has long since passed.

Furthermore, Defendants fail to carry their burden of establishing that transfer is proper based on the relevant factors enumerated by the Ninth Circuit. *See Jones*, 211 F.3d at 498-99. Plaintiff's tort claims arise from business dealings with an Arizona

corporation, of which Defendant Carlile was an owner and operator. The parties do not raise any legal issues in this case that are unfamiliar to the State of Arizona and its governing law. While not as strong as a domestic plaintiff's forum choice, a foreign plaintiff's choice of forum deserves some deference, especially when the choice is reasonable based on the fact that Plaintiff is suing an officer in an Arizona corporation at the time of the transaction. *See, e.g.*, *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000). Although Defendants point out that Defendant Carlile "resides, has filed bankruptcy, and is dealing with attendant adversary proceedings" in California, that does not nullify his specific contacts and affiliation with Arizona while operating an Arizona corporation. (*See* Doc. 213 at 4). As reasoned above, both parties have carried on litigating this matter in Arizona for over four years, demonstrating that Plaintiff's choice of forum has not unnecessarily burdened either party.

Finally, other courts have routinely held that the eve of trial is not the proper time to raise concerns as to venue.[1] Defendants have had ample time in this case to request a transfer of venue and failed to raise the issue until the eve of trial. Granting Defendants' request to transfer would unnecessarily delay proceedings and hinder the "interests of justice" at play in this case, as well as inconvenience the parties and witnesses who have already made arrangements to appear in this Court for the start of trial on October 25, 2017. *See Jones*, 244 F.3d at 495. The Court will not further inconvenience the parties by entertaining such an untimely request, but rather finds that the impending trial must go on as scheduled after several, lengthy delays throughout litigation. (*See* Doc. 217 at 4).

---

[1] *See, e.g.*, *In re Sea Ray Boats, Inc.*, 2017-124, 2017 WL 2577399, at *1 (Fed. Cir. June 9, 2017) (holding that a district court did not abuse its discretion in denying a motion to transfer venue filed "[a]pproximately two weeks before the start of trial" in a case filed two years prior; the Federal Circuit further declined to grant the party's writ of mandamus to stay trial proceedings to determine if venue was proper because the request was made "on the eve of trial"); *United States v. Maynie*, 257 F.3d 908, 915 (8th Cir. 2001) (holding that a district court "was unquestionably within its discretion" to deny a criminal defendant's motion to transfer, in part because the motion was filed "essentially on the eve of trial"); *BP Products N. Am. Inc. v. Super Stop No. 701, Inc.*, 08-61301-CIV, 2010 WL 1049234, at *1 (S.D. Fla. Mar. 22, 2010) (explaining that "Defendants possibly waived enforcement of the venue clause by waiting until the eve of trial to make the argument").

## III.    PLAINTIFF'S REQUEST FOR MONETARY SANCTIONS

Plaintiff requests monetary sanctions on the belief that "Defendant Carlile is once-again attempting to delay the trial with a frivolous Motion for Leave to file a baseless Motion to Dismiss for Lack of Personal Jurisdiction." (Doc. 217 at 4). "Awards of attorneys' fees under 28 U.S.C. § 1927 are not frequently made." *Wight v. Achieve Human Servs., Inc.*, 2:12-CV-1170 JWS, 2012 WL 4359078 (D. Ariz. Sept. 21, 2012). Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions "must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). In the Ninth Circuit, "section [1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

Here, while the Court observes that Defendants' Motion (Doc. 213) is untimely, Plaintiff does not sufficiently allege evidence of bad faith in his request for monetary sanctions, which is required under Section 1927. *See New Alaska Dev. Corp.*, 869 F.2d at 1306. Defendants' request is based on a recent Supreme Court decision, although this Court remains unpersuaded that *Bristol-Myers Squibb* does anything to alter the jurisdictional analysis herein. Furthermore, the Court's denial of the motion prevents the filing from further delaying or causing the multiplication of proceedings at hand. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 43. Accordingly, the Court shall not impose monetary sanctions with respect to this action at this time.

## VI. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendants' Motion for Leave to File a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Request to Transfer the Case to the Central District of California (Doc. 213) (the Clerk of the Court shall leave the proposed motion lodged at Doc. 214) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Monetary Sanctions (Doc. 217) is also **DENIED**.

Dated this 4th day of October, 2017.

James A. Teilborg
Senior United States District Judge